Leon HAMPTON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 08–00–00045–CR.

Court of Appeals of Texas, El Paso.

Jan. 25, 2001.

Rhett Hoestenbach, Odessa, for Appellant.

John W. Smith, Dist. Atty., J. Roderick Price, Deputy Dist. Atty., Odessa, for State.

Before LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

In two issues involving voluntariness of a juvenile's custodial statement and mid-trial disclosure of exculpatory evidence, Leon Hampton, Jr. appeals his conviction for murder. We reverse and remand.

### FACTS

On the evening of March 18, 1999, a man was shot and killed at an apartment complex in Ector County, Texas. Within three minutes of the shooting, Lashara Nicole Preston, who lived in an apartment near where the shooting took place, found appellant Leon Hampton, Jr. on her back porch, asking to be let inside. Jarvis Darnell Preston, her brother, offered to take Hampton home. Preston testified at trial that after the two men left the apartment complex, Hampton told Preston that he thought he had shot somebody in self-defense. On the night of March 22, 1999, Odessa Police found and arrested Hampton. At that time, Hampton's mother advised Detective Dean McCann that Hampton was a juvenile. Hampton was taken into custody for absconding from juvenile probation, not as a murder suspect. While at the police station, Detective McCann asked Hampton several times if he cared to give a statement. After Hampton settled down and stopped being "vocal and profane," he agreed. Once police were able to verify that Hampton was sixteen years old, officers transported him to the youth detention center. Because it was late, Detective McCann decided to postpone taking Hampton's statement until morning so that everyone could be well rested. The next morning, Detective McCann arrived at the youth center, asked Hampton if he wanted to give a statement, Hampton answered in the affirmative, and together they returned to the police station. Once there, after waiting forty-five-minutes, Hampton received his *Miranda* warnings. Immediately thereafter, Detective McCann videotaped Hampton's statement. Hampton was then arrested for murder and taken back to the youth center.

It was not until Hampton was giving his statement that Hampton's mother first learned of her son's change in status from absconder to murder suspect, and that he had agreed to make a statement.

The trial court held a pretrial hearing and denied Hampton's motion to suppress the statement. In that statement, which was admitted into evidence at trial over Hampton's objection, Hampton admitted to having shot the deceased, but maintained he had acted in self-defense.

### Motion to Suppress Statement

In the first issue on appeal, Hampton asserts that the trial court erred in failing to suppress his videotaped statement and allowing it to be introduced into evidence at trial. He urges that the manner in which his statement was taken violated the Texas Family Code.[1] We agree.

Issues regarding a confession of a juvenile, though raised in a criminal forum, are controlled by the applicable provisions of the Family Code.[2] When a juvenile is in custody, the detaining authorities must comply with the Family Code's requirements.[3] A juvenile's confession, if illegally taken, cannot be admitted against him in a subsequent criminal trial, consistent with Article 38.23 of the Texas Code of Criminal Procedure.[4]

Texas Family Code §§ 52.02(a) and (b) provide:

(a) . . . a person taking a child into custody, without unnecessary delay and

---

1. TEX.FAM.CODE ANN. § 52.02 (Vernon Supp. 2001).

2. *See Smith v. State*, 881 S.W.2d 727, 731 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

3. *See id.*

4. *See id.*

without first taking the child to any place other than a juvenile processing office designated under Section 52.025, shall do one of the following:

. . .

(3) bring the child to a detention facility designated by the juvenile court[.][5]

(b) A person taking a child into custody shall promptly give notice of his action and a statement of the reason for taking the child into custody, to:

(1) the child's parent, guardian, or custodian; *and*

(2) the office or official designated by the juvenile court.[6]

Here, Detective McMann complied with Section (a) when he initially took Hampton to the police station, as the specific room to which he brought Hampton (Room 203D) is a designated facility for the temporary detention of juveniles. There was, however, no compliance with the second section recited above. Although police initially informed Hampton's mother that he was being taken into custody on a juvenile absconder warrant, they did not tell her of the murder charge until Hampton was in the process of making his statement, and then only when she called authorities to find out about her son's status. Detective McCann did not promptly give notice to Hampton's mother of Detective McCann's action with regard to the murder charge, nor did he tell her why he was taking Hampton to the police station the following morning. Moreover, the record contains no evidence of any attempt to notify the office or official designated by the juvenile court. Because Detective McCann did not

act in accordance with Texas Family Code Section 52.02(b), Hampton's confession was illegally obtained, and therefore, the trial court abused its discretion in not suppressing the statement and in admitting it into evidence.

**Harm Analysis**

 Having determined that the trial court erred in failing to suppress Hampton's statement, we must now consider whether Hampton was harmed by the improperly admitted evidence under Tex. R.App.P. 44.2 governing reversible error in criminal cases.[7] Even under the more lenient standard, which requires us to disregard non-constitutional error unless it affects substantial rights of the defendant,[8] we conclude Hampton was harmed. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[9] In the present case, Hampton chose not to testify. Particularly in light of the undisclosed *Brady* evidence discussed below, we are concerned that Hampton's statement had a potentially dramatic effect on the jury's decision-making process. After examining the record as a whole, we cannot say with fair assurance that the error did not influence the jury, or had but a slight effect.[10] We therefore conclude that the denial of Hampton's motion to suppress and the admission of his statement at trial affected Hampton's substantial rights and therefore constitutes reversible error. Hampton's first issue is sustained.

***Brady*[11] Violation**

 In his second issue on appeal, Hampton contends he was prejudiced by

---

5. Tex.Fam.Code Ann. § 52.02(a) (Vernon Supp. 001).

6. Tex Fam.Code Ann. § 52.02(b) (Vernon Supp. 2001).

7. *See In re C.R.*, 995 S.W.2d 778, 786 (Tex. App.—Austin 1999, pet. denied).

8. *See id.*

9. *See id.*

10. *See id.* at 787.

11. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

the State's delayed disclosure of exculpatory evidence, in violation of the due process clause of the fourteenth amendment, as set out in *Brady v. Maryland.*[12] Under *Brady,* a prosecutor has an affirmative duty to turn over exculpatory or impeachment evidence favorable to the defendant which is material either to guilt or to punishment.[13] In the middle of trial and immediately before the State rested its case-in-chief, Hampton informed the court that he had just received a "Supplementary Report" from Sergeant Carl Rogers containing exculpatory evidence. Hampton requested a continuance for the purpose of locating two witnesses mentioned in this report. The report indicated that the witnesses had seen two black males running away from the shooting scene, one of whom was Jarvis Preston. The trial court denied Hampton's request for a continuance and subsequent motion for mistrial.

Hampton argues here that in compliance with *Brady,* he should have been allowed to investigate and locate the two witnesses noted in the Supplemental Report. He contends that had he been afforded time in which to find and question these witnesses, Hampton may well have chosen a different defense strategy which could have exonerated him. The State responds by asserting that the trial court did not abuse its discretion when it refused to grant Hampton's request for a continuance or mistrial, as the Ector County district attorney's open file policy satisfies the disclosure requirements of *Brady,* citing *McFarland v. State,*[14] *Todd v. State,*[15] and *Vega v. State.*[16] We find each of these cases distinguishable

because there the "undisclosed" evidence was shown to have been within each open file prior to trial.[17] Here, in contrast, the State merely assumes the supplementary report was within the file, but nothing in this record indicates this was so.

Alternatively, the State argues that Hampton assured the State that he had everything he needed, because the County Attorney's office gave him their entire file prior to the certification hearing, and because the District Attorney's office had an open file policy, it was not error for the trial court to deny a continuance based on *Brady.* We find this argument is beside the point because Hampton could only assure the State that he was in possession of all documents in the "open file" as the file existed when he viewed it. There being no showing here that the supplementary report had ever been a part of the State's "open file" at all, Hampton would not have known that such exculpatory evidence existed. Under these circumstances, we cannot agree that the State's "open file" policy satisfied *Brady* in light of Hampton's assertion in open court that he saw the report for the first time during trial, and where nothing in this record contradicts that assertion.

Finally, we note that in order to show a *Brady* violation warranting reversal, an appellant must satisfy a three-pronged test: (1) the State failed to disclose information; (2) favorable to the accused; (3) that creates a probability sufficient to undermine our confidence in the outcome of the proceeding.[18] Although

---

**12.** *Id.*

**13.** *State v. DeLeon,* 971 S.W.2d 701, 705 (Tex. App.—Amarillo 1998, pet. ref'd); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**14.** 928 S.W.2d 482 (Tex.Crim.App.1996).

**15.** 911 S.W.2d 807 (Tex.App.—El Paso 1995, no pet.).

**16.** 898 S.W.2d 359 (Tex.App.—San Antonio 1995, pet. ref'd).

**17.** *See McFarland,* 928 S.W.2d at 511 (noting that State's file contained information that robbery victim failed to identify second robber in line-up); *Vega,* 898 S.W.2d at 362 (mentioning that State placed handwashing specimen report in open file); *Todd,* 911 S.W.2d at 818 (determining that State had included witness's inconsistent statements in open file prior to trial).

**18.** *Thomas v. State,* 841 S.W.2d 399, 404 (Tex. Crim.App.1992); *Johnston v. State,* 917 S.W.2d 135, 138 (Tex.App.—Fort Worth 1996, pet. ref'd).

this harm analysis predates our present TEX.R.APP.P. 44.2, because *Brady* violations implicate constitutional rights, we believe the result under either formulation of the harm test is the same.

Here, Hampton had no time to locate and interview two potentially exculpatory witnesses. His self-defense strategy may well have been altered, or even discarded, had there been eyewitnesses describing other persons fleeing the shooting scene. Moreover, one of the individuals purportedly fleeing the scene was Jarvis Preston, a prosecution witness who testified he was watching television in his sister's apartment when he heard shots fired, and who told the jury Hampton admitted to shooting "that dude," albeit in self-defense. We find this testimony, if presented to the jury, had a strong impeachment potential, may have created implications that Preston was an accomplice, even possibly creating a reasonable doubt theory as to Hampton's culpability as a shooter. All three *Brady* harm elements are satisfied, as is the harm requirement of TEX.R.APP.P. 44.2(a). Hampton's second issue on appeal is sustained.

## CONCLUSION

The judgment is reversed and the case is remanded to the trial court.