**Affirmed and Opinion filed April 16, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00101-CR

**DERRICK KEVIN METCALF, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1544492**

## OPINION

Appellant Derrick Metcalf challenges his capital murder conviction in four issues, contending the trial court erred in refusing to instruct the jury on the law of parties and the lesser included offense of attempted capital murder. Appellant also asserts that the trial court abused its discretion in admitting extraneous offense evidence involving a previous attempt to poison the complainant. We affirm.

## Background

Appellant had a romantic relationship with Rose Hunt. Hunt became pregnant and thought appellant was the father. Hunt asked appellant to go to doctor visits with her, and he refused. Hunt subsequently contacted the mothers of appellant's children and told them about the pregnancy. Appellant became annoyed with Hunt's persistence. He approached a friend, Justin Odom, and asked if Odom could help him "make someone disappear." Odom introduced appellant to David Galindo.

Galindo told appellant he would kill Hunt for $1,500. Galindo planned to take Hunt on a "date" and kill her on Tri City Beach Road, a relatively untraveled road in a secluded area. Appellant made a $500 down payment. Appellant testified at trial that he called Galindo a week after making the initial payment to call it off. Galindo killed Hunt anyway, and appellant paid the $1,000 balance. Appellant testified that he paid the balance because Galindo told him "[i]f you don't have my money, something bad can happen to you. . . . I knew he had killed Rose. And so, I knew that he would have no problem killing me."

On February 24, 2017, Hunt's body was discovered on the side of Tri City Beach Road. She was eight months pregnant and had been shot in the head. Witnesses linked Galindo to a vehicle that was seen on that road around the time of the murder. After officers interviewed Galindo, they also interviewed appellant and arrested him. He was charged with capital murder.

At trial, Galindo's girlfriend, Daizy Costello, testified that she was present when Galindo and appellant discussed the plan to kill Hunt. During that meeting, appellant told Galindo he previously had tried to poison Hunt but she would not die. Celia Torres was also present during the conversation and testified that appellant said he used rat poison and antifreeze in his attempts to kill Hunt.

2

*Discussion*

Defendant contends that the trial court should have submitted jury charge instructions on the law of parties and attempted capital murder. Defendant further asserts that the trial court erred in admitting evidence that he had attempted to poison Hunt. We first address the jury charge issues and then turn to the evidentiary challenges.

## I.    Jury Charge Instructions Not Required

Appellant contends in issues one and two that the trial court erred in failing to submit jury charge instructions on the law of parties and the lesser included offense of attempted capital murder. We review a complaint of jury charge error under a two step process. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether error occurred, and then, if we find error, we evaluate whether harm resulted from the error sufficient to require reversal. *Id*. (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). Jury charge error requires reversal when the defendant has properly objected to the charge and we find "some harm" to his rights. *Id*. When the defendant fails to object, reversal is only appropriate if the record shows "egregious harm" to the defendant. *Id*. at 743-44.

As relevant in this case, a person commits capital murder if he "commits murder as defined under" section 19.02(b)(1) of the Penal Code and "the person . . . employs another to commit the murder for remuneration or the promise of remuneration." Tex. Penal Code § 19.03(a)(3). A person commits murder under section 19.02(b)(1) if he "intentionally or knowingly causes the death of an individual." *Id*. § 19.02(b)(1).

**Law of Parties Instruction**. Appellant contends that he was "a party to the

physical act of murder," not a principal, so the trial court should have submitted a jury instruction on the law of parties.[1] "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. § 7.01(a). A person is criminally responsible for another's conduct when he acts "with intent to promote or assist the commission of the offense" and "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2).

Appellant was indicted with "unlawfully, intentionally, and knowingly caus[ing] the death of ROSE HUNT . . . by employing DAVID GALINDO for remuneration and the promise of remuneration." The jury charge provided the following instructions on murder and capital murder:

> A person commits the offense of murder if he intentionally or knowingly causes the death of an individual.
>
> A person commits the offense of capital murder if he employs another to commit the murder for remuneration or the promise of remuneration. . . .
>
> Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 24th February, 2017, the defendant, Derrick Kevin Metcalf, did then and there unlawfully, intentionally or knowingly cause the death of Rose Hunt, by employing David Galindo for remuneration or the promise of remuneration, to-wit: cash money, by shooting Rose Hunt with a deadly weapon, namely a firearm, then you will find the defendant guilty as charged in the indictment.

Appellant's counsel posited during oral argument that the indictment and charge improperly injected a word into the statute, "by," thus incorrectly allowing appellant to be convicted as a principal to capital murder instead of as a party

---

[1] Appellant concedes that he did not ask the trial court to submit a law of parties instruction to the jury.

4

("intentionally or knowingly cause the death of Rose Hunt, **by** employing David Galindo" (emphasis added)). According to appellant, he would be a party to the offense only upon a finding that he was criminally responsible for Galindo's actions. The State contends that "employ[ing] another to commit . . . murder for remuneration or the promise of remuneration" is one manner or means of committing capital murder under the statute as a principal, and thus the inclusion of the word "by" in the indictment and charge was appropriate. We agree with the State.

The jury charge gave an instruction on the elements of capital murder under section 19.03(a)(3) and then applied the facts to the elements of the charged offense—in short, the charge authorized the jury to convict only upon a finding beyond a reasonable doubt that appellant "intentionally or knowingly" caused Hunt's death as required under the statute. *See id*. § 19.03(a)(3); *see also Lopez v. State*, 493 S.W.3d 126, 137 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). The manner and means authorized under the statute by which appellant was charged with causing Hunt's death was "employing David Galindo for remuneration or the promise of remuneration." *See Lopez*, 493 S.W.3d at 137; *cf. Gamez v. State*, 665 S.W.2d 124, 127 (Tex. App.—San Antonio 1983) (noting capital murder statute enumerates five ways in which one commits capital murder), *aff"d*, 737 S.W.2d 315 (Tex. Crim. App. 1987). Our sister court has held that a person commits capital murder as a principal "if he 'intentionally or knowingly causes the death of an individual' by employing another to commit the murder for remuneration or the promise of remuneration." *Lopez*, 493 S.W.3d at 137. We agree. Accordingly, the trial court properly instructed the jury that it could convict appellant as a principal to capital murder. *See Lopez*, 493 S.W.3d at 137 ("[W]e conclude that the application paragraph authorized conviction of Lopez as a principal under the

correct *mens rea* element.").

Appellant cites *Gamez v. State* in support of his argument that he was entitled to an instruction on the law of parties. *See* 665 S.W.2d 124. In that case, the defendant hired someone to kill a man. *Id*. at 125. The defendant argued on appeal that the State was required to prove he "personally shot the deceased" because the indictment alleged that the defendant "intentionally and knowingly" caused the complainant's death by shooting him and by "employ[ing someone] for remuneration and promise of remuneration . . . to kill the . . . complainant by shooting [him]." *Id*. at 126-27. The court of appeals acknowledged that the defendant was guilty as a party to murder because he was not the shooter. *Id*. at 127. The court held on this basis that the trial court did not err in including a law of parties instruction. *Id*. But the court further noted that the indictment also alleged an additional fact allowing the jury to convict the defendant: "employing another to commit murder for remuneration, so that the indictment, when viewed in its entirety, charge[d] capital murder." *Id*. The court concluded, "because of the proof of the murder contract and the payment of money, [the defendant was] also guilty of capital murder," *id*., which would have been as a principal.

Here, the indictment did not allege that appellant intentionally and knowingly caused Hunt's death by shooting her. *See id*. Instead, the State alleged only that appellant intentionally and knowingly caused Hunt's death by employing David Galindo to kill Hunt, which, if true, made appellant a principal to capital murder. *See Lopez*, 493 S.W.3d at 137. There is no evidence in this record that appellant was a party, as opposed to a principal, to capital murder. *See id*. Accordingly, a party instruction under these facts would have been superfluous and

was not required.[2] *See id.* at 137 n.2.

We conclude that the trial court was not required to instruct the jury on the law of parties because appellant was indicted and charged as a principal to capital murder. Thus, the trial court did not err in failing to submit the instruction. We overrule appellant's first issue.

**Attempted Capital Murder Instruction**. Appellant contends that the trial court erred in refusing his request for an instruction on the lesser included offense of attempted capital murder because he presented evidence that he had changed his mind before Hunt was killed and no longer had the requisite intent to commit the offense. He argues, "since renunciation as a legal defense is not permitted by the statute, the jury was left with no legal avenue to express an opinion if it believed that appellant no longer had the intent to murder the complainant."[3]

A defendant is entitled to an instruction on a lesser included offense when the proof for the offense charged includes the proof necessary to establish the lesser included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). The State does not dispute that capital murder includes the proof necessary to establish attempted capital murder. *See* Tex. Code Crim. Proc. art. 37.09(4) ("An offense is a lesser included offense if . . . it consists of an attempt to commit the offense charged or an otherwise included offense."). We turn to whether there is some

---

[2] We also note that party liability enlarges criminal responsibility and such an instruction would have benefitted the State. *See Lopez*, 493 S.W.3d at 127 n.2.

[3] The parties agree that renunciation is available as a legal defense only as to criminal attempt, criminal conspiracy, and criminal solicitation, and renunciation was not an available defense in this case. *See* Tex. Penal Code §§ 15.01-.04; *see also Wesbrook v. State*, 29 S.W.3d 103, 121-22 (Tex. Crim. App. 2000).

evidence in the record that would permit a jury rationally to find appellant guilty only of attempted capital murder.

"The evidence must establish that the lesser included offense is a valid, rational alternative to the charged offense." *Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016). We must examine all the evidence admitted at trial, but we may not consider the credibility of the evidence and whether it conflicts with other evidence or is controverted. *See id*.

Criminal attempt occurs when a person, with specific intent to commit an offense, does an act amounting to more than mere preparation that tends but fails to effect commission of the offense intended. Tex. Penal Code § 15.01(a); *Bullock*, 509 S.W.3d at 925. Thus, to find appellant guilty of attempted capital murder, the jury would have to find that he (1) intended to murder Hunt by employing Galindo for remuneration or the promise of remuneration, and (2) did an act that amounted to more than mere preparation, but (3) failed to effect the completed offense. *See Bullock*, 509 S.W.3d at 925 (involving attempted theft).

Here, if the jury believed that appellant did not intend to murder Hunt, it would have been required to acquit appellant because intent is a required element of both capital murder and attempted capital murder. *See* Tex. Penal Code §§ 15.01(a), 19.02(b)(1), 19.03(a)(3). In other words, attempted capital murder and capital murder both require the same culpable mental state—the specific intent to murder. Accordingly, to find appellant guilty only of attempted capital murder, the jury still would have to conclude appellant had the specific intent to murder Hunt by employing Galindo to kill her but failed to effect commission of the offense. *See Ransier v. State*, 594 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (supp. maj. op.) (involving attempted tampering with evidence).

Intentionally or knowingly causing someone's death by employing another

8

to murder someone for remuneration or the promise of remuneration amounts to capital murder under the statute. *See Lopez*, 493 S.W.3d at 137; *see also* Tex. Penal Code §§ 19.02(b)(1), 19.03(a)(3). Appellant was required to point to some evidence that he failed to effect commission of the offense. *See Ransier*, 594 S.W.3d at 21-22.

The record at trial includes evidence that appellant paid Galindo $500 as a down payment to kill Hunt with the promise of further remuneration after the offense was completed. Costello testified that appellant urged Galindo, "I already paid you. Get the job done," indicating that Galindo was taking too long to kill Hunt. Appellant also paid the balance "due" after Galindo killed Hunt. Although appellant testified that he tried to call it off and only paid Galindo because he was afraid of Galindo, this is not evidence that appellant had the specific intent to murder Hunt by employing Galindo to kill her but failed to effect commission of the charged offense. *See e.g., Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) (holding defendant was not entitled to instruction on aggravated assault when "there was no evidence that [he] was guilty only of anything less than some form of murder"); *Nguyen v. State*, No. 14-15-01023-CR, 2017 WL 1540810, at *3 (Tex. App.—Houston [14th Dist.] Apr. 27, 2017, pet. ref'd) (mem. op., not designated for publication) (holding defendant was not entitled to lesser included instruction on aggravated assault when the complainant died); *Alphin v. State*, No. 06-11-00257-CR, 2012 WL 6060764, at *1, 10 (Tex. App.—Texarkana Dec. 6, 2012, no pet.) (mem. op., not designated for publication) (concluding defendant, who was party to capital murder, was not entitled to instruction on attempted capital murder because the complainant died after being shot by another party to the offense); *Smith v. State*, 881 S.W.2d 727, 734 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding defendant's intent to cause serious bodily injury resulting

in the complainant's death was murder and there was no evidence defendant was guilty only of attempted murder).

We conclude the trial court did not err in refusing appellant's requested instruction on the lesser included offense of attempted capital murder because there is no evidence from which a jury could rationally find that appellant had the specific intent to commit capital murder but failed to do so. We overrule appellant's second issue.

## II. No Abuse of Discretion in Admitting Evidence

Appellant also challenges in his third and fourth issues the trial court's admission of testimony from Costello and Torres that appellant previously had tried to poison Hunt.[4] Appellant objected to the testimony under Rules of Evidence 404(b) and 403.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

**Extraneous Offense**. Under rule 404(b), evidence of a "crime, wrong, or other act" is not admissible to prove a person's character. Tex. R. Evid. 404(b)(1). But such evidence may be admissible for another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2); *see also Pena v. State*, 554 S.W.3d 242, 248 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Appellant concedes that the challenged testimony was admissible to show intent. Without citing any

---

[4] Appellant contends that the evidence of his poisoning Hunt was also admitted through Odom, but Odom did not testify about the poisoning.

authority, appellant argues that this evidence was "not required" and should have been excluded because the State presented other evidence to prove intent. But the test is whether the evidence should have been excluded because it was offered to show appellant's character, not whether the evidence was *required* when there was other evidence of intent.

The State offered the evidence for the proper purpose of establishing intent, particularly given the fact that appellant's defense at trial was that he lacked the intent to murder Hunt. *See, e.g., Sorto v. State*, 173 S.W.3d 469, 491 (Tex. Crim. App. 2005) ("Evidence of appellant's participation in [another] murder just four months earlier, however, served to rebut his argument that he lacked the requisite intent to promote or assist . . . in the capital murder in the instant case."); *Sifuentes v. State*, 494 S.W.3d 806, 816 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding evidence that defendant had committed similar offenses was admissible to show intent to commit robbery). Accordingly, the trial court did not abuse its discretion in admitting the evidence under Rule 404(b). We overrule appellant's third issue.

**Unfair Prejudice**. Appellant also contends that the probative value of the contested testimony was substantially outweighed by the danger of unfair prejudice. Under Rule 403, in relevant part, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Tex. R. Evid. 403.

All evidence tends to be prejudicial to one party or the other. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Webb v. State*, 995 S.W.2d 295, 301 (Tex. App.—Houston [14th Dist.] 1999). Prejudice is "unfair" if it has an "undue

tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery*, 810 S.W.2d at 378. In conducting a rule 403 analysis, courts must balance (1) the inherent probative force of the proffered evidence and (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by the jury, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be cumulative of other evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Ripstra v. State*, 514 S.W.3d 305, 318 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Appellant contends that the balancing test weighed in favor of excluding the evidence because (1) it permitted the jury to convict him of an extraneous offense, (2) developing the evidence was moderately time consuming, and (3) the State had other evidence to establish intent. The State argues the balancing test weighs in favor of admission because (1) the evidence was highly relevant to establishing knowledge and intent to commit capital murder and rebut appellant's testimony that he changed his mind and paid Galindo under duress, (2) the need for the evidence was high, given that appellant was challenging intent and it rebutted appellant's evidence that his desire to kill Hunt was impulsive, (3) it was unlikely that the evidence would have suggested a decision on an improper basis, given the trial court's limiting instructions, and (4) the chance that the evidence would confuse or distract the jurors was low because abundant evidence was introduced demonstrating appellant's guilt and the State spent little time developing the testimony.

Turning to the factors, the probative force of the evidence was considerable.

12

Appellant testified that he did not intend to kill Hunt. Costello and Torres testified that in fact appellant stated he had tried unsuccessfully to kill Hunt himself. Accordingly, this evidence supports the inference that appellant had been plotting to murder Hunt before meeting Galindo. The trial court also reasonably could have concluded that the State's need for the evidence was great because appellant hotly challenged intent at trial. *See Sorto*, 173 S.W.3d at 491.

The trial court similarly could have concluded that the evidence did not have a tendency to suggest a decision on an improper basis. First, the trial court instructed the jury during trial and in the charge as follows:

> You are instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

We presume the jury followed this instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Second, the testimony related directly to the charged offense because it shows that appellant wanted Hunt to die and tried unsuccessfully to kill her once before.

The trial court likewise reasonably could have concluded that the evidence did not tend to confuse or distract the jury from the main issue in the case—whether appellant intended to kill Hunt. The State presented other evidence of intent, including appellant's testimony, Costello's testimony that appellant urged Galindo to "[g]et the job done," and proof of appellant's payments to Galindo before and after the crime.

The trial court further reasonably could have concluded that the jury would not tend to give the evidence undue weight—appellant's counsel cross-examined Costello about her involvement in the crime and her agreement with the State to reduce her charge from capital murder to murder.[5] Defense counsel also confronted Torres regarding whether she had previously told police that appellant attempted to poison Hunt. Moreover, defense counsel vigorously challenged Torres's credibility.

Finally, the trial court reasonably could have concluded that presentation of the evidence would not consume an inordinate amount of time or be needlessly cumulative—the State spent a comparatively small amount of time developing this evidence at trial, and the evidence was presented only through Costello and Torres. The State mentioned the evidence in its closing argument only briefly.

The trial court, after balancing the Rule 403 factors, reasonably could have concluded that the probative value of the challenged testimony was not substantially outweighed by the countervailing factors specified in the rule. *See Gigliobianco*, 210 S.W.3d at 642-43; *Sorto*, 173 S.W.3d at 491 & n.91 (concluding probative value of extraneous offense evidence was not substantially outweighed by danger of unfair prejudice when evidence was relevant to intent as "an essential disputed issue in the case" and jury was given instruction to limit its consideration of evidence to proper purpose). We overrule appellant's fourth issue.

---

[5] Costello had been charged with capital murder for her involvement in the offense, and the charge was reduced to murder because she agreed to testify against appellant and plead guilty to murder.

14

## *Conclusion*

We affirm the judgment of the trial court.


/s/    Frances Bourliot
        Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.

Publish — TEX. R. APP. P. 47.2(b).