Christopher Phillip LOPEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–85–00084–CR.

Court of Appeals of Texas,
El Paso.

Aug. 13, 1986.

John W. Cliff, Jr., Smith & Cliff, P.C., Odessa, for appellant.

R.C. "Eric" Augesen, Dist. Atty., Odessa, for appellee.

Before OSBORN, C.J., and SCHULTE and ARMENDARIZ, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a jury conviction for murder. The jury assessed punishment at fifty years imprisonment. We affirm.

Ground of Error No. One asserts that the evidence is insufficient to establish that the Appellant caused the death of the alleged victim, Irineo Duran, Jr. The argument is predicated upon a characterization of the case as one relying upon circumstantial evidence, necessitating a more stringent standard of appellate review. We disagree. Appellant argues that the circumstantial evidence standard is applicable because no one saw the bullets fired by him strike the deceased, and because the testimony of various witnesses differed as to the number of shots fired. Visual observa-tion of a fatal bullet in flight is an unreasonable expectation and is not a prerequisite for direct evidence. In addition, there is no concrete conflict in the testimony as to the number of shots fired. Raymond Alvarez heard "about four." John Vargas estimated eight to ten shots and found three bullet holes in his vehicle where the deceased was injured. Leon Nabarrette, another occupant of the vehicle, estimated that there were six or seven shots. The Appellant's companion, Luis Moreno, testified that he heard four shots. Defense witness Ida Carrasco heard more than two. Appellant testified that he fired four times at the vehicle:

> The first one, I took good aim [at John Vargas, the driver], and the other ones, I closed my eyes and shot towards the side, just going towards the car, back towards the car. I shot four times.

The shots were fired from Appellant's position at a distance of ten to fifteen feet. No one else was armed and no one else was observed shooting. In his confession, Appellant clearly accepted responsibility for causing the death. The evidence of causation was sufficient to support the verdict. *Romo v. State*, 593 S.W.2d 690 (Tex.Crim. App.1980). Ground of Error No. One is overruled.

In Ground of Error No. Two, Appellant complains of the court's refusal to charge the jury on the lesser offense of voluntary manslaughter. Appellant and his three companions drove to a party in south Odessa. Appellant was apprehensive because of the prospect of encountering members or allies of the Mendoza family with whom his family had been engaged in a protracted conflict. Appellant's mother had been shot and his brother killed the preceding year. In preparation for the party, he placed a loaded .30 caliber carbine in the trunk of the car. A few minutes after they arrived, Appellant was advised that one John Vargas was in a Blazer parked nearby. Appellant had heard that Vargas was responsible for his mother's injury. Vargas too became aware of Appellant's presence and backed out to leave. As he did

so, Appellant drew the rifle from the trunk of his vehicle. No threats were made by Vargas and no weapons were observed. Appellant in his confession and testimony stated that he feared being shot at or run over by Vargas:

> I got to thinking about my Mom and my brother and I got mad and started crying. I had been drinking. I looked back and the trunk to Paul's [Appellant's companion, Paul Pequeno] car was open. I went and got my gun out of the trunk. The first shot I took good aim, but the others, about three, I just closed my eyes and shot.

At least three rounds hit the Vargas vehicle. One struck Irineo Duran, Jr. in the head, killing him. The jury was instructed on the law of self-defense and apparent danger.

■ There are basically two emotional states which tend towards the existence of sudden passion as defined in Tex.Penal Code Ann. sec 19.04 (Vernon 1974)—anger and fear. Appellant's confession and the testimony suggest the presence of both, but not in an appropriate degree or context to require submission of voluntary manslaughter to the jury. The fear element is in connection with Vargas's action in backing up his vehicle. While Appellant may have been apprehensive that Vargas would continue in reverse in an effort to run him down, there is no evidence that the fear rose to a level of terror sufficient to render Appellant incapable of cool reflection. *Lawrence v. State*, 700 S.W.2d 208 (Tex. Crim.App.1985); *Moore v. State*, 694 S.W.2d 528 (Tex.Crim.App.1985); *Bradley v. State*, 688 S.W.2d 847 (Tex.Crim.App. 1985). The level of emotional response described by Appellant justified a submission of self-defense, which fully and adequately covered the defensive posture raised by the evidence.

The anger element is suggested by Appellant's reference to his having heard rumors that Vargas was involved in the prior shooting of Appellant's mother. Under this theory, voluntary manslaughter was not raised by sufficient evidence as to a variety of sub-issues. The passion was not sudden, but a long-simmering response to *suspected* former provocation. This is further reflected in Appellant's own testimony that he was reluctant to go to the party because he feared a confrontation with Vargas and his allies, he armed himself prior to going to the party, and he left the weapon in a position of easy access in the unlocked trunk.

■ In addition, we find no adequate cause as a matter of law. The sudden passion and adequate cause definitions of Section 19.04 establish both subjective and objective elements of voluntary manslaughter. The actor must be in the throes of actual, subjective passion. This does not, however, initiate the murderous acts of one not of ordinary temper or whose response to the alleged cause is not objectively common in the ordinary, reasonable person. In other words, voluntary manslaughter is not available to one whose actual emotional responses are aberrational in this society. The basis for Appellant's suspicion that Vargas was involved in the shooting of his mother was inadequate to justify an angry act of revenge. Without legally adequate cause, no amount of subjective passion will justify submission of voluntary manslaughter. *Provost v. State*, 514 S.W.2d 269 (Tex. Crim.App.1974).

Finally, there is no evidence that the deceased, Irineo Duran, Jr., was acting in concert with Vargas in any provocative manner on the night of the shooting or in the earlier incidents concerning Appellant's mother and brother. *See: McCartney v. State*, 542 S.W.2d 156, 160–161 (Tex.Crim. App.1976). Ground of Error No. Two is overruled.

The final ground of error alleges jury misconduct in the form of consideration of evidence outside the record. By affidavit and testimony at the hearing on a motion for new trial, Juror Pamela Harris stated that several jurors indicated that it takes a "minute or so" to sight a rifle scope at night, particularly with lights shining in the shooter's eyes. The issue was signifi-

cant in relation to the length of time available to Appellant to retreat to a position of safety as John Vargas was backing up his vehicle. Appellant testified at trial that (1) the shooting occurred at night; (2) the rifle had a telescopic sight; (3) the rifle was in the trunk of Paul Pequeno's vehicle with the lid down but not locked; (4) as Vargas began backing up, Appellant went to the trunk and removed the rifle; (5) Vargas continued to back up with the rear lights shining on Appellant; (6) Appellant focused the scope on Vargas's head and fired one carefully aimed shot; and (7) Appellant then fired three more shots in rapid succession. In assessing Appellant's self-defense claim, the jurors were discussing the length of time available to carry out the above actions with the given lighting conditions, as opposed to retreating behind or beneath one of the nearby vehicles or behind a nearby cinder block wall. Several jurors attempted to sight the rifle in the darkened jury room, with only some light available from the bathroom.

Mrs. Harris said that she rejected the self-defense claim on the basis of available retreat, a conclusion which she reached by relying on the "minute or so" estimate made by Juror Spruiell. She further stated that she took his comment literally as a full sixty seconds or more, although she admitted she was not sure if that was what he meant. Spruiell and another juror testified as well. Spruiell stated that he did not proffer the time estimate as a matter of exact fact and did not mean precisely sixty seconds. He and Juror Battaglia testified that they were only discussing the obvious difficulty and greater time required to aim a rifle under the conditions in evidence. No conclusion was reached by the "experiment" conducted in the jury room. *See: Douthit v. State,* 482 S.W.2d 155 (Tex. Crim.App.1972).

██ Spruiell's comment as to the length of time required to sight a rifle at night appears on its face to be a general observation founded upon the application of common knowledge to facts and evidence. Spruiell and Battaglia testified that the dis-

cussion did not attempt to establish mathematical precision. That Mrs. Harris chose to attach such precision to the comment was her own personal decision, a mental process not subject to review for new trial purposes. *Munoz v. State,* 524 S.W.2d 710 (Tex.Crim.App.1975). Otherwise, the challenged comment was within the permissible scope of jury deliberation, including reasonable deductions from the trial evidence incorporating matters within the common knowledge and experience of the average juror. *Carter v. State,* 614 S.W.2d 821 (Tex.Crim.App.1981); *Hightower v. State,* 629 S.W.2d 920 (Tex.Crim.App.1981); *Salinas v. State,* 542 S.W.2d 864 (Tex.Crim. App.1976). Ground of Error No. Three is overruled.

The judgment is affirmed.

ARMENDARIZ, Justice, dissenting.

I respectfully dissent. I would reverse and remand this cause on Appellant's Ground of Error No. Three where he complains that the jury engaged in an unauthorized experiment or demonstration after retiring to consider their verdict.

In *Munoz v. State,* 524 S.W.2d 710 (Tex. Crim.App.1975), relied upon by the majority in its decision herein, the Court of Criminal Appeals correctly refused an inquiry into a juror's mental processes in reaching a verdict on evidence adduced at the trial itself. The appellate court rejected a complaint that the jury foreman wrongfully denied a confused juror a re-reading of a part of the evidence already of record. No issue of newly introduced evidence by the jury is present in *Munoz, supra.* In the instant case, no evidence was introduced at the trial by either side touching on the specific time that it would take to sight a rifle scope at night under the circumstances and conditions testified to by the witnesses during the trial of the case. The majority opinion admits that the issue was significant on a vital element in Appellant's defensive theory. Indeed it was. Juror Harris stated that she rejected the self-defense claim on the basis of available retreat, a conclusion which she reached by relying on

the "minute or so" assertion made by Foreman Spruiell derived from the complained of experiment or demonstration.

Not all experiments or demonstrations engaged in by a jury cause a reversal situation. However, where introduction of a new fact or facts is shown, any influence that the newly introduced fact might have had on the juror or jurors is a proper element of inquiry. More important, the Appellant must affirmatively show that the jury was in fact influenced by the introduction of the alleged new evidence, or that the juror or jury did not rely on their own judgment in determining the issue, if he is to prevail in his protest. *See: Smith v. State*, 152 Tex.Cr.C. 399, 214 S.W.2d 471 (1948). To that extent, an inquiry into the mental process of the jury as affected by such new evidence, if any, is not only proper, but necessary.

In the instant case, Foreman Spruiell's comment as to the length of time required to sight a rifle, under the circumstances reproduced by him and the others in the experiment or demonstration in the jury room, added a fact not of record to the matter on a vital and controversial issue in this case. *Compare: Douthit v. State*, 482 S.W.2d 155 (Tex.Crim.App.1972), cited in the majority opinion, where the Court of Criminal Appeals held that there was no showing that a new fact, hurtful to defendant, was discovered by the experiment and influenced the jury. In the instant case, Foreman Spruiell's testimony influenced at least one juror adversely to Appellant's position. *See: Smith, supra.* Even though this juror may have misunderstood the intention and the meaning of the factual assertion on the part of the jury foreman, it is clear that she relied on the express results of the experiment or demonstration in reaching her decision and did not rely on her own judgment on the issue of self-defense. Foreman Spruiell acted as a witness in this case and gave testimony on a controverted issue. *See: Smith v. State*, 218 S.W.2d 851 (Tex.Crim.App.1949). This resulted in an unfair trial for Appellant.

I would reverse the judgment of the trial court and remand the cause for a new trial.