# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-00-00773-CR

**Juan Delacruz Bustillo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 994156, HONORABLE BOB PERKINS, JUDGE PRESIDING

Appellant Juan DelaCruz Bustillo[1] was convicted by a jury of felony murder, *see* Tex. Pen. Code Ann. § 19.02 (West 1994), for which punishment was assessed at seventy years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant presents two issues complaining that: (1) trial counsel failed to provide effective assistance, and (2) the evidence was factually insufficient to support the judgment of conviction. We affirm the trial court's judgment.

## I. BACKGROUND

On August 12, 1999, at approximately 3:00 p.m., two men flagged down Austin police officer Edward Robertson in the area of Seventh Street and Pedernales in Austin. The men informed

---

[1] Appellant is also referred to in the record as Juan Delacruz Bustillo Martinez.

him that another man had been shot or stabbed about one block away. The men led Officer Robertson to the location. Robertson discovered the victim, Robert Daniel Duran, who subsequently died of a stab wound. Appellant was charged by indictment with intentionally and knowingly causing Duran's death.

## II. ANALYSIS

We will first consider appellant's second issue by which he contends that the evidence was factually insufficient to support the judgment of conviction. Specifically, appellant contends that the jury erred in failing to find that he acted in self-defense.

### A. Factual Sufficiency of the Evidence

### 1. Standard of Review

In determining factual sufficiency, the reviewing court does not review the evidence "in the light most favorable to the prosecution"; rather, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim App. 2000). In our review, we must consider all the evidence in the record, not just the evidence that supports the verdict. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We may disagree with the jury's determination. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Our review, however, must be appropriately deferential; we may not substitute our own judgment for that of the fact finder

2

or substantially intrude on the jury's role as the sole judge of the weight and credibility of witness testimony. *Id.*; *Johnson*, 23 S.W.3d at 7. Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination concerning the weight given to contradictory testimony. *Johnson*, 23 S.W.3d at 8.

### 2. The Evidence

At trial, evidence was presented relating to the events that transpired the day of the altercation between appellant and the victim. James Parnell testified that appellant was a crack cocaine dealer who sold drugs from his apartment. Parnell had purchased and had observed others purchase drugs from appellant. He had also observed others exchange merchandise for drugs with appellant. On the day of the altercation, Parnell observed an argument between appellant and a person Parnell knew as "Little Chino." Parnell testified that appellant was angry because someone had slashed his tires; appellant initially believed "Little Chino" had committed this act and confronted him. Later in the afternoon, Parnell and the victim decided to buy crack cocaine. Parnell gave the victim money, and the victim went to appellant's apartment to make the purchase. After approximately ten minutes, Parnell walked over to appellant's apartment. He saw appellant, the victim, and others present in the apartment. Parnell testified that appellant was yelling at the victim and appeared threatening and visibly angry. Parnell testified that appellant said he was angry because he now believed that the victim had slashed his tires. Parnell witnessed appellant stab the victim in the chest with a large kitchen knife and then pull the knife out of the victim's chest. Parnell testified that the victim was unarmed during the attack. After the victim was stabbed, he ran out of the

apartment and down an alley. Parnell followed the victim. When another person began to assist the victim, Parnell returned to appellant's apartment and told appellant that he had killed the victim.

Michael Berron also testified at the trial. Berron testified that he informed appellant the day before the altercation that the victim had burglarized appellant's apartment. On that same day, Berron witnessed an argument between appellant and the victim in which appellant told the victim not to come to his apartment again. Appellant told the victim that if he did, appellant "was going to either kick his ass or kill his ass." Berron also witnessed the confrontation between appellant and "Little Chino" on the day of the altercation. Berron testified that the victim walked up during that argument and appellant told him to leave "because I'm going to beat your ass or I'm going to end up killing your ass." Berron then left the area and did not return until after the victim was stabbed.

Doroteo Jaimes also provided testimony. Jaimes testified that several minutes before he was informed that the victim had been stabbed, he was in his apartment talking to appellant. A man walked by the open apartment door, and appellant left the apartment following behind the man. The man asked appellant for something.[2] Although Jaimes did not observe any other interaction between appellant and this man, he did testify that this man did not have a weapon.

The statement appellant provided to police on the evening of the altercation was read into the record at trial by Officer Ismael Campa of the Austin Police Department. In the statement, appellant claimed that while he was talking to people in another apartment, the victim walked by.

---

[2] Jaimes was unsure what the man requested from appellant. He thought it might have been a lighter or a match.

4

Appellant told the victim to leave and not to come back. Appellant stated that the victim laughed and made fun of him. Appellant began walking to his apartment, and the victim followed him. The victim then bumped appellant and pulled out a small knife. Appellant tried to grab the knife, he pushed it down, and the knife hit the victim in the chest. The victim then walked faster towards a gas station. Appellant left in the opposite direction and went to a bar. In the area of the bar, he purchased clothes from a person who was walking by. He changed clothes and discarded the clothes he had been wearing. Later, he met a friend and went to another bar.

Detective Campa testified that the police had not found a single witness, including appellant's friends, that could corroborate appellant's statement that the victim had assaulted him. Detective Campa also testified that a person attacked with a knife usually has defensive injuries, and appellant had no defensive injuries when he was arrested on the evening of the altercation.

The Deputy Medical Examiner for Travis County, Elizabeth Peacock, performed the autopsy on the victim and testified at the trial. Peacock testified that the size of the victim's wound indicated that he was killed with a heavy knife with a broad, blunt edge at least six inches long.

Appellant also testified on his own behalf at trial. In recounting his altercation with the victim, appellant testified that the victim was carrying a large stick. He testified that in front of his apartment, next to his vehicle, the victim approached him and pulled out a knife. Appellant was not sure exactly how the victim was carrying the knife or what happened to the stick. In his trial testimony, appellant was unable to describe the size of the knife. After the altercation, appellant left the scene. Seven hours later, when appellant was exiting a bar with his friend, police officers approached him. Appellant admitted that he gave the officers a false name at that time and again

5

when he was questioned at the police station. He testified that he did that because he was afraid that he might be arrested as a result of the altercation with the victim.

### 3. Discussion

Appellant contends that the jury erred in failing to find that he acted in self-defense. Although appellant claims that there were no eyewitnesses to his altercation with the victim to contradict his self-defense claim, Parnell testified at trial as an eyewitness to the stabbing. Parnell's testimony completely contradicts appellant's self-defense theory. Parnell testified that appellant was angry and accused the victim of slashing his tires. According to Parnell, appellant then stabbed the victim who was unarmed.

Berron's testimony established motive for the murder. Berron testified that he informed appellant that the victim had burglarized appellant's apartment. Berron also testified that appellant had threatened the victim.

Appellant's self-defense theory is also contradicted by other witnesses. Jaimes, as Parnell, testified that the man he observed appellant talking to was unarmed. Detective Campa testified that no other witnesses were found that could corroborate appellant's statement that the victim had assaulted him. Detective Campa also testified that appellant had no defensive injuries after the altercation with the victim.

Furthermore, appellant's statement to police and trial testimony undermine his credibility as a witness. Immediately after the altercation, appellant quickly left the scene, purchased clothing from a person on the street, changed his clothing, and discarded the clothing he had been wearing. He claimed he did this because his clothes were dirty, not because they were bloody. At

the time of his arrest and again at the police station, appellant provided a false name to the officers. Furthermore, the officers observed no defensive injuries on appellant. Although appellant claimed in his statement to officers that the victim assaulted him with a small knife, he was unable to describe the size or any other characteristic of the knife at trial after Peacock, the medical examiner, testified that a large knife was used in the attack. Finally, appellant claimed for the first time during cross-examination that the victim was also carrying a stick.

The issue of self-defense is an issue of fact to be determined by the jury. *Saxon v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). The jury is the sole judge of the weight and credibility of the evidence. *Id*. at 914; *Johnson*, 23 S.W.3d at 7. In this case, the jury was entitled to reject appellant's self-defense claim considering Parnell's eyewitness testimony, the testimony of other witnesses that contradicted statements made by appellant, and statements made by appellant to the police and at trial that undermined his credibility as a witness. Because this assessment of the testimony is well within the province of the jury, we will not second guess their determination on appeal. Appellant's contention that the evidence was factually insufficient to support the judgment of conviction is without merit. Accordingly, we overrule appellant's second issue.

## B. Ineffective Assistance of Counsel

In appellant's first issue, he contends that his trial counsel failed to provide effective assistance because: (1) counsel failed to pursue voluntary manslaughter as an alternative to a conviction for murder, and (2) counsel failed to object to the prosecutor's improper statements during closing arguments.

7

## 1. Standard of Review

To prevail in his claim of ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that: (1) counsel's performance was deficient, and (2) the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772-74 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986).

The review of a trial counsel's representation on an ineffective-assistance challenge is highly deferential to the counsel's professional judgment. *Strickland*, 466 U.S. at 689. In meeting the first prong of the *Strickland* test, appellant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonably professional assistance. *Id*. He must identify the acts or omissions of counsel that are not the result of reasonable professional judgment. *Id*. at 690. He must then show, in light of all the circumstances, that the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. To meet the second prong of the test, appellant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id*.

## 2. Failure to Pursue Voluntary Manslaughter

Appellant contends that trial counsel was ineffective because counsel failed to request a jury charge on the lesser included offense of voluntary manslaughter as an alternative to murder. He contends that if counsel had presented this option, there was a reasonable probability that the jury would have found him guilty of voluntary manslaughter rather than murder. This contention is not

supported by current Texas law. Sections 19.02 and 19.04 of the Texas Penal Code are the statutory provisions governing murder and manslaughter. These sections were amended effective September 1, 1994.[3] Before those sections were amended, a defendant was entitled to a jury charge on the lesser included offense of voluntary manslaughter if evidence was presented from which the jury could find that the defendant caused the death of an individual under circumstances that would constitute murder under section 19.02, except that the defendant caused the death under the immediate influence of sudden passion arising from an adequate cause. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). As a result of the amendments, for any homicide committed after August 31, 1994, a jury no longer has the option of finding the defendant guilty of voluntary manslaughter. Rather, a defendant may attempt to prove the issue of "sudden passion" only during the punishment phase of the trial. *See* Tex. Pen. Code Ann. § 19.02(d) (West 1994); *Westbrook v. State*, 29 S.W.3d 103, 113 n.7 (Tex. Crim. App. 2000). Accordingly, sudden passion is no longer an affirmative defense; if proven, it only mitigates the punishment a defendant receives. We may overrule the voluntary manslaughter aspect of appellant's ineffective-assistance claim on this basis.

In light of the change in law, however, we will consider appellant's contention on this claim as a complaint that trial counsel was ineffective because counsel failed to request a "sudden passion" instruction to the jury at the punishment phase of the trial. To be entitled to receive a "sudden passion" instruction at the punishment phase, a defendant must prove that he caused the death of a person under the immediate influence of sudden passion arising from adequate cause. Tex.

---

[3] *See* Acts of June 19,1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613-14.

Pen. Code Ann. § 19.02(d) (West 1994). "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id.* § 19.02(a)(1). "Sudden passion" means passion directly caused by and arising out of the provocation by the deceased or someone acting with the deceased that arises at the time of the offense and is not solely the result of former provocation. *Id.* § 19.02(a)(2).[4] The analysis in "sudden passion" cases divides into two inquiries: (1) the record must demonstrate some evidence of "adequate cause"—a cause sufficient to produce anger, rage, resentment, or terror in a person of ordinary temper rendering the person incapable of cool reflection; and (2) the record must demonstrate some evidence of "sudden passion"—an excited and agitated state of mind at the time of the killing caused by direct provocation by the victim or someone acting with the victim. *Merchant v. State*, 810 S.W.2d 305, 309 (Tex. App.—Dallas 1991, pet. ref'd).

To demonstrate "sudden passion," appellant must produce: (1) objective evidence that the victim or someone acting with the victim directly provoked the defendant at the time of the killing, and (2) subjective evidence demonstrating that the defendant killed the victim while in an excited and agitated state of mind arising out of the direct provocation. *Id.* at 310. The defendant must produce evidence that he acted in the "throes of actual, subjective passion." *Lopez v. State*, 716

---

[4] These statutory definitions are substantially similar to the definitions provided in former section 19.04 of the Texas Penal Code, now repealed, prescribing the second-degree felony offense of voluntary manslaughter. *Compare* Tex. Pen. Code Ann. § 19.02 *with* Acts of June 14, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913 (former Tex. Pen. Code Ann. § 19.04) *repealed by* Acts of June 19, 1993, 73d Leg, R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614. Because the definitions are substantially similar, we may look to decisions regarding sudden passion under the previous voluntary manslaughter law for guidance on this issue. *Perez v. State*, 940 S.W.2d 820, 822 (Tex. App.—Waco 1997, no pet.).

S.W.2d 127, 129 (Tex. App.—El Paso 1986, no pet.). A bare claim of fear does not show adequate cause. *Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983).

Analyzing the testimony in this case, we will consider appellant's testimony as if believed by the jury. Assuming the victim was carrying a large stick and did assault appellant with a small knife, this evidence is sufficient for the jury to have objectively found legally adequate cause. *See Merchant,* 810 S.W.2d at 310. Furthermore, the jury could have found the assault to be a cause that could produce anger, rage, resentment, or terror in a person of ordinary temper which would render the person incapable of cool reflection. *See id.* Appellant testified that the victim was carrying a large stick, assaulted him with a small knife, and said to him, "Pull out what you've got." This evidence is sufficient for the jury to have objectively found that the victim directly provoked the appellant at the time of the killing.

But appellant must next provide subjective evidence demonstrating that he killed the victim while acting in the "throes of actual, subjective passion." Appellant testified as follows on direct examination:

Q: So your testimony is that Duran [the victim] pulled a knife on you?

A. Yes.

Q: What do you think he was trying to do?

A: I don't know. Maybe he wanted to kill me. I don't know.

Q: Is that what you felt, that he was trying to kill you?

A: Yeah, because I felt, I mean, at the moment that I saw that he pulled out that weapon, I just felt—

Q: Did you feel that you were in danger at that time?

A: Yes.

Q: Did you feel that you were in danger of losing your life at that time?

A: Yes.

Q: How did you react?

A: Me?

Q: Yes.

A: Well, as I said, at that moment I felt really scared, and what I did was just tried to find a way to defend myself.

Q: And you grabbed the knife?

A: Yeah, I kind of grabbed at it, but it was never in my hand.

Q: Whose hand was it in?

A: His.

Q: The knife was in his hands, and you grabbed it?

A: Yeah, but in other words, I never grabbed it. I kind of grabbed at the handle. Do you understand?

Q: And what did you do?

A: And, well, it just, you know, in the time that he put out the knife and he was coming at me and I don't know how kind of like I grabbed at it, I kind of caught it, I don't know and he's the one that ended up hurt.

After appellant stabbed the victim, the victim asked appellant to call an ambulance. Appellant did not.

Instead, he quickly walked away, bought clothes from a person on the street, changed clothes

12

immediately, discarded the clothes he was wearing, went to eat, and then went drinking at a bar.

Appellant further described the altercation as follows on cross-examination:

Q: You must have been afraid of him at that point, right?

A: Yeah.

Q: Because you had a stick in your face, he was going to hit you with a stick?

A: Yeah, of course. Well, I didn't have that—I wasn't afraid because I didn't really think that he was going to be able to hurt me, that he was going to assault me with that. I didn't think that.

Q: You didn't think he was going to do anything to you then. You didn't think he was going to attack you?

A: No, but by that time I was really close to my house, real close, and he was getting closer and closer to me, really up close to me and saying pull out what you've got, pull out what you've got.

Q: Is that when you got afraid?

A: Yeah, well, I mean, I didn't get scared, but we were there close to my house, he was getting closer and closer and then suddenly he pulls out the weapon.

. . . .

Q: Then what did you do?

A: I don't remember. It just seems like—it seems like I got my hand in there and I was able to grab it by the handle.

. . . .

A: I can tell you that I saw the weapon. I cannot tell you what it looked like, what kind it was. All I did was I reacted. I tried to defend myself. I put my hand up.

In this case, appellant merely claimed in his trial testimony that he feared the victim at the moment he acted in self-defense; this is insufficient to raise the issue of "sudden passion." *Daniels*, 645 S.W.2d at 460.

As we have previously indicated, the *Strickland* standard requires the appellant to demonstrate that trial counsel made such serious errors that counsel was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *Strickland*, 466 U.S. at 687. A defendant asserting an ineffective-assistance claim must overcome a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Id*. at 689. This burden is made more difficult when, as in this case, no motion for new trial asserting ineffective assistance is filed allowing for a record to be developed focused on the conduct of counsel. *See Gravis v. State*, 982 S.W.2d 933, 937 (Tex. App.—Austin 1998, pet. ref'd); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.); *Howard v. State*, 966 S.W.2d 821, 828 (Tex. App.—Austin 1998, pet. ref'd); *Bohnet v. State*, 938 S.W.2d 532, 536 (Tex. App.—Austin 1997, pet. ref'd); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. App.—Austin 1994, no pet.). "[A]ny allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *see Mallett v. State*, No. 152-01, slip op. at 4, 2001 Tex. Crim. App. LEXIS 130, at *5 (Tex. Crim. App. Dec. 19, 2001). Generally, a reviewing court will not speculate about counsel's trial strategy. *Mayhue*, 969 S.W.2d at 511. In this case, we have no record from which we may discern that counsel's performance was not based on sound strategy. As the court of criminal appeals pointed out in *Thompson*, a substantial risk of

14

failure accompanies an appellant's claim of ineffective assistance on direct appeal. *Thompson*, 9 S.W.3d at 813. In a majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id.* at 813-14; *Mallett v. State*, No. 152-01, slip op. at 4, 2001 Tex. Crim. App. LEXIS 130, at *5. In the absence of an adequately developed record in this direct appeal, the errors of which appellant complains may not overcome the strong presumption of reasonably effective assistance. Accordingly, we overrule the "sudden passion" aspect of appellant's ineffective-assistance claim.

### 3. Prosecutor's Improper Closing Arguments

Appellant contends that trial counsel failed to provide effective assistance because he failed to object to the prosecutor's improper comments in the closing arguments. Proper jury argument falls within one of the following categories: (1) summation of the evidence, (2) reasonable deductions from the evidence,( 3) response or answer to opposing counsel's argument, or (4) plea for law enforcement. *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Appellant asserts that the prosecutor made three improper comments: (1) the prosecutor improperly commented on the credibility of the witnesses at trial; (2) the prosecutor argued facts not in evidence when he commented on the type of wound the victim received; and (3) the prosecutor argued facts not in evidence when he provided an interpretation for a phrase used for purchasing crack cocaine. We will consider each of these arguments individually.

### a. Credibility of witnesses

Appellant contends that the prosecutor improperly commented on the credibility of the witnesses at trial when she argued as follows:

You are the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given to the testimony.

That's very important because as you can tell, the witnesses that came through here were not exactly the most upstanding individuals. They're certainly not priests or nuns. These people live on the streets. They see—they see a lot of bad stuff. In fact you heard from several witnesses this is a very bad area, an extremely bad area. Because of that, we're not going to try to sell you that these witnesses are being 100 percent truthful at all times. I think that you could, you know, use your common sense and know that sometimes when we asked personal questions about maybe the fact that they bought crack or used crack or bought from this defendant, they sort of hem-hawed and sort of weren't necessarily as forthcoming as you expect them to be because we all got a pretty clear picture of what happens out there in that part of town and we can tell what was going on. So I'm sure some of them were more involved in that than they're giving you.

A prosecutor is permitted to argue that a defense witness is not worthy of belief. *Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993). A prosecutor is also permitted wide latitude in drawing inferences from the evidence provided those inferences are reasonable and offered in good faith. *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993).

In the present case, the witnesses made subject of the prosecutor's comments are the State's witnesses; the prosecutor was not commenting on the credibility of the defense's witnesses. By her statements, the prosecutor was trying to explain the charge of the court, which instructed the jury that they were the exclusive judges of the credibility of the witnesses. The prosecutor's comments were not a direct attack on the credibility of the trial witnesses; rather, the comments were a reasonable deduction from the testimony. During the trial, some of the witnesses denied purchasing crack cocaine from the appellant. We conclude that it was a reasonable deduction on the part of the prosecutor that a drug user may not be as forthcoming regarding a drug habit when it may implicate

16

that person's illegal activity. Accordingly, the State was permitted to comment on the truthfulness of its own witnesses when explaining the charge of the court to the jury.

### b. Facts not in evidence

Appellant contends that trial counsel should have objected to the following comments made by the prosecutor because he claims the comments constituted arguing facts not in evidence:

Something else that's important, where his stab wound is. That's a stab wound caused by a left-handed person. Did you get that? Did you notice when the defendant was demonstrating, he said that the victim had the knife in his left hand. And I was kind of surprised by that except that it was natural for him to use his left hand. Most people are right-handed. When you demonstrate, you demonstrate with your right hand. But he demonstrated with his left hand. With his left hand.

A left-handed person in front of me stabbing me would stab me right here. That's the natural place for it to go. Remember the doctor's testimony, it [the stab wound] went from right to left. A left-handed person stabbing this way. It went from right to left, angled this way.

Although the prosecutor may not use closing arguments to argue facts not in evidence, the prosecutor may draw all inferences that are reasonable and offered in good faith. *Id.* The prosecutor did not inject new facts outside the record; rather, the prosecutor drew a reasonable deduction from the testimony presented by the witnesses. Peacock, the medical examiner, testified that the stab wound was located on the right side of the victim and that the wound track went sharply right to left. Furthermore, when appellant testified at trial, he demonstrated how the victim was holding the weapon using his left hand. Based on this testimony, the prosecutor was permitted to comment on the fact that it was natural for appellant to use his left hand during the demonstration at trial. Additionally, the prosecutor could reasonably infer from the record that a left-handed person stabbed

17

the victim based on Peacock's description of the wound track going from right to left. Accordingly, the prosecutor did not argue facts not in evidence; rather, the prosecutor drew a reasonable deduction from testimony at trial.

Appellant also contends that his trial attorney should have objected to the following comments made by the prosecutor because he claims the comments constituted arguing facts not in evidence:

> But at this time it [the apartment complex] was a high drug-dealing area. That's why all the crack heads hang out there. It's not a crack head playground. They're not there to get exercise. They're there to get crack. You want to know where to find the crack heads at? A place where they sell crack. Are they knocking on his door and asking for water? How crazy is that? Unless water means I want some crack. Maybe it does. I don't know. I've never heard that term. But if they're knocking on [apartment] D, it's because they're looking for crack. You don't have to be a scientist to figure that part out.

Appellant testified at trial that he did not sell drugs. During cross-examination, appellant stated that drug users in the neighborhood often stopped by his apartment requesting water; they did not stop by to purchase crack cocaine. In response to this statement, the prosecutor questioned appellant's veracity considering the fact that several witnesses, including appellant, testified that the area in which appellant's apartment was located was a high drug trafficking area. The prosecutor could reasonably infer from the evidence presented that drug users in the area were not simply going to appellant's apartment for water; rather, the drug users were going to appellant's apartment to purchase crack cocaine. Accordingly, the prosecutor did not argue facts not in evidence; the prosecutor drew a reasonable deduction from the testimony presented at trial and challenged the appellant's denial of selling drugs and his subsequent explanation for the numerous drug users who came to his apartment.

Any objections appellant's counsel might have made on the basis of these comments would have been futile. Counsel is not required to perform frivolous or futile acts to demonstrate reasonably effective assistance. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (failure to file motion to quash jury panel not deficient where there was no evidence that venire was biased); *Kinnamon v. State*, 791 S.W.2d 84, 97 (Tex. Crim. App. 1990) (failure to request charge on lesser included offense not deficient where evidence did not authorize submission of lesser included offense charge).

Appellant has failed to demonstrate either prong of the *Strickland* standard. He has not demonstrated that counsel's performance was deficient or that any deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Accordingly, we overrule appellant's first issue.

### III. CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   January 17, 2002

Do Not Publish