Opinion issued June 25, 2009












     



In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00604-CR




EMILE ANTHONY LEWIS, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court 
Harris County, Texas
Trial Court Cause No. 1130489




MEMORANDUM OPINION

          A jury found appellant, Emile Anthony Lewis, guilty of murder and assessed
his punishment at 99 years in prison.


 In two issues, appellant contends that the trial
court erred by admitting extraneous offense evidence during the guilt-innocence stage
of trial and by denying appellant’s request to charge the jury on the defensive issue
of sudden passion during the punishment phase. 
          We affirm. 
Background
          Playing highschool football was an important part of 17-year-old Herman
Mitchell’s life. On the afternoon of August 24, 2007, Herman’s team had a
scrimmage. Three of Herman’s teammates—Nicholas Nwoko, Erik McNeil, and
Charles Byars—arrived at Herman’s apartment complex to pick him up. The group
of boys was walking toward Nwoko’s car to leave when they encountered appellant,
who also lived at the apartment complex. Appellant glared at Nwoko and said,
“What’s up big boy?” In response, Nwoko said, “What’s up?” Appellant also asked
whether Nwoko had “a problem” with him. Appellant then told the group of boys to
wait there, and said that he would be back in five minutes. When they testified
regarding this encounter at trial, Nwoko’s, McNeil’s, and Byars’s combined
testimony intimated that appellant was initiating a confrontation with Nwoko.
          Appellant left, and the boys got into Nwoko’s car to leave. Mitchell then said
that he wanted to wait for appellant to return. Mitchell, who knew appellant and had
been friends with him, wanted to stay to defuse the situation. 
          When he returned to where the boys were waiting, appellant appeared angry. 
Mitchell tried to calm appellant down by telling him “it’s good” and “chill out.” 
Appellant did not calm down, and appellant and Mitchell began to argue. Appellant
took off his shirt, put up his fists, and charged Mitchell. Mitchell punched appellant,
and appellant fell to the ground. Mitchell punched appellant a couple of more times. 
Appellant tried to get up, fell back down, got back up, and then ran off looking dazed.
          Mitchell telephoned his mother to tell her what had happened. Mitchell told
his mother that he was concerned for his younger brother who was home alone. 
Mitchell told his mother that he would wait to leave until she could come home. 
          While Mitchell was waiting for his mother, appellant’s mother walked up to
Mitchell. She was crying and yelling. Appellant’s mother asked Mitchell what had
happened. 
          A couple of minutes after appellant’s mother arrived, appellant returned to the
scene with his brother. Appellant was carrying a rifle. Appellant stepped in between
his mother and Mitchell and aimed the gun at Mitchell. Mitchell asked appellant,
“What, you gon’ kill me?” Mitchell backed away and tried to shield himself with the
door of Nwoko’s car. Appellant’s brother kicked the car door causing Mitchell to fall
backwards onto the car’s seat. 
          Without speaking, appellant stood over Mitchell and repeatedly fired the rifle
until it was empty of ammunition. Appellant and his brother then ran away. 
Appellant’s friends called 9-1-1 and administered CPR. Mitchell ultimately died
from the gunshot wounds.
          Harris County deputies responded to the call. Once at the scene, the deputies
obtained consent from appellant’s mother to search the apartment where she and
appellant lived. The deputies recovered two rifles from an attic crawl space. One of
the weapons was a .35 Winchester rifle and the other was a Japanese Wold War II era
weapon. Access to the crawl space is through the ceiling of appellant’s bedroom
closet. The deputies also recovered ammunition from appellant’s nightstand.
          Ballistics evidence showed that the shell casings taken from the scene of the
shooting and the bullets taken from Mitchell’s body matched the Winchester rifle
recovered from appellant’s apartment. 
          After the shooting, appellant’s neighbor, John Quick, walked by the shooting
scene. Quick saw the shell casings on the ground and noticed their very unique
caliber. Quick bent down to look at the casings and recognized that they had come
from a “.35 Winchester self-loader.” At trial, Quick testified that he owned such a
rifle and that they are “very rare.” Quick identified the weapon that had been used
to kill Mitchell as his .35 Winchester rifle. According to Quick, the rifle was
manufactured in 1905. He testified that only 5000 such rifles were made, and they
are valued at between $10,000 and $12,000 each. Quick also testified that the
Japanese rifle recovered from appellant’s apartment also belonged to him. 
          Over the defense’s objection, Quick testified that appellant did not have
permission to possess either firearm. Quick stated that, on the day of the shooting,
he did not know the location of the weapons. 
          Appellant was taken into custody. When interviewed by homicide detectives,
appellant denied any involvement in the shooting of Mitchell. Appellant also denied
being present at the scene or having any knowledge of the shooting. 
          The jury found appellant guilty of murdering Mitchell. This appeal followed.
Extraneous Offense
          In his first issue, appellant contends that “the trial court erred by admitting over
[his] objection testimony regarding the extraneous theft of the murder weapon and
another firearm during the guilt/innocence phase of appellant’s trial.” 
          It is clear from the record that appellant was not harmed by the admission of
the complained-of evidence. Thus, we assume, without deciding or commenting, that
the trial court erred by admitting the evidence and proceed directly to the harm
analysis. See Coleman v. State, 188 S.W.3d 708, 726 (Tex. App.—Tyler 2005, pet.
ref’d) (assuming error in admission of complained-of evidence and addressing
appellant’s contention that error was harmful).
          The erroneous admission of an extraneous offense is non-constitutional error. 
See Johnson v. State, 84 S .W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d); Boyd v. State, 899 S.W.2d 371, 375–76 (Tex. App.—Houston [14th Dist.]
1995, no writ). Rule of appellate procedure 44.2(b) therefore applies. Tex. R. App.
P. 44.2(b). 
          When applying rule 44.2(b), we disregard the error unless it affected
appellant’s substantial rights. Id. A substantial right is affected when the error had
a substantial and injurious effect or influence in determining the jury’s verdict. King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not
affect a substantial right if we have “fair assurance that the error did not influence the
jury, or had but a slight effect.” Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim.
App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In making this determination, we review the record as a whole, including any
testimony or physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, and the character of the alleged error, and how it
might be considered in connection with other evidence in the case. Motilla v. State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury
instructions, the State’s theory and any defensive theories, whether the State
emphasized the error, closing arguments, and even voir dire, if applicable. Id. at
355–56.
          Here, the State presented ample evidence of appellant’s guilt. During its
case-in-chief, the State called Nwoko, McNeil, and Byars, who each gave his
eyewitness account of the shooting. Each of these witnesses knew appellant and
identified him at the scene and in the courtroom as the shooter. The evidence also
showed that the murder weapon was recovered from the attic crawl space above
appellant’s bedroom closet.
          In addition, the disputed evidence did not serve to improperly bolster other
evidence against appellant but was proffered to assist the factfinder in understanding
the circumstances under which appellant obtained the murder weapon. The State
spent little time eliciting the disputed testimony and made no reference to it in closing
argument. 
          Lastly, the record reflects that the trial court provided a limiting instruction
regarding testimony of extraneous offenses in the jury charge. Absent evidence to the
contrary, the jury is presumed to follow the instructions given in the court’s charge. 
Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). Appellant has not
rebutted this presumption. 
          After reviewing the record, we have a fair assurance that any error in admitting
the extraneous offense evidence either did not influence the jury or had but a slight
effect. We conclude that any error in admitting the extraneous offense evidence did
not have a substantial or injurious effect on the jury’s verdict and did not affect
appellant’s substantial rights. See King, 953 S.W.2d at 271. Accordingly, we hold
that any error in admitting the complained-of evidence should be disregarded and is
harmless. See Tex. R. App. P. 44.2(b). 
          We overrule appellant’s first issue.
Sudden Passion Instruction
          In his second issue, appellant contends that “the trial court erred when it denied
appellant’s request to include an instruction regarding sudden passion in the jury
charge at the punishment phase of [his] trial.” 
          During the punishment phase of trial, a defendant may argue that he caused the
death while under the immediate influence of sudden passion arising from an
adequate cause. McKinney v. State, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005);
see Tex. Penal Code Ann. § 19.02(d) (Vernon 2003). “Sudden passion” is “passion
directly caused by and arising out of provocation by the individual killed or another
acting with the person killed which passion arises at the time of the offense and is not
solely the result of former provocation.” Tex. Penal Code Ann. § 19.02(a)(2).
“Adequate cause” is “cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection.” Id. § 19.02(a)(1). Sudden passion is a mitigating factor
that, if found by the factfinder to have been proven by a preponderance of the
evidence, reduces the offense from a first-degree felony to a second-degree felony.
See id. § 19.02(c)–(d).
          A trial court should include a sudden passion instruction in the charge if it is
raised by the evidence, even if that evidence is weak, impeached, contradicted, or
unbelievable. Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). But,
the evidence cannot be so weak, contested, or incredible that it could not support such
a finding by a rational jury. McKinney, 179 S.W.3d at 569. Therefore, to be entitled
to a jury instruction on sudden passion, the accused must prove that there was an
adequate provocation, that a passion or an emotion such as fear, terror, anger, rage,
or resentment existed, that the murder occurred while the passion still existed and
before there was reasonable opportunity for the passion to cool; and that there was
a causal connection between the provocation, the passion, and the murder. Id. We
review a trial court’s decision not to instruct the jury on a defensive issue, such as
sudden passion, for an abuse of discretion. See Love v. State, 199 S.W.3d 447, 455
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (citing Wesbrook v. State, 29
S.W.3d 103, 122 (Tex. Crim. App. 2000)). 
          In reviewing a case involving a sudden passion jury charge, it is our duty to
focus on the evidence supporting that charge, not on the evidence refuting it. 
Trevino, 100 S.W.3d at 239. Here, appellant points to the following evidence in his
brief as supporting his argument that he was entitled to a sudden passion instruction:
          •        Appellant appeared angry before the fight began;
          •        Mitchell “threw the first” punch,” knocking appellant to the ground;
 
          •        Mitchell continued to punch appellant while appellant was on the
ground;
 
          •        Appellant never had an opportunity to throw a punch;
 
          •        Appellant had difficulty getting up from the ground, looked “dazed,”
and stumbled away from the scene;
 
          •        Appellant had a black eye;
 
          •        Appellant returned to the scene only a few minutes after the fight; 
 
          •        Appellant appeared angry when he returned to the scene;
 
          •        When he returned, appellant found Mitchell in a “confrontation” with
appellant’s mother, who was yelling and crying;
 
          •        Appellant stepped in between his mother and Mitchell;
 
          •        Mitchell was described as “strong” and an “accomplished linebacker
who was going to play college football”; 
 
          •        Appellant pointed the rifle at Mitchell and shot him “without saying a
word”; and 
 
          •        Appellant shot Mitchell “repeatedly, and even kept pulling the trigger
after the gun was empty.” 
          After reviewing the record and the cited evidence, we cannot conclude that the
evidence raised the issue of sudden passion. 
          Appellant contends that the shooting arose because the evidence showed that
he was angry and “dazed.” Not all testimony that a defendant is angry or dazed
entitles a defendant to a sudden passion instruction. One who provokes or instigates
a confrontation cannot claim sudden passion to excuse his actions. See Naasz v.
State, 974 S.W.2d 418, 423, 425–26 (Tex. App.—Dallas 1998, pet. ref’d); Westbrook
v. State, 846 S.W.2d 155, 159 (Tex. App.—Fort Worth 1993, no pet.); Villegas v.
State, 791 S.W.2d 226, 239 (Tex. App.—Corpus Christi 1990, pet. ref’d). More
precisely, when a defendant initiates the criminal episode, the victim’s subsequent
acts of violence do not constitute adequate cause from which sudden passion may
arise. Adanandus v. State, 866 S.W.2d 210, 230–31 (Tex. Crim. App. 1993)
(applying former Penal Code section 19.04 and holding that defendant not entitled to
instruction on voluntary manslaughter because bank customer’s conduct of tackling
bank robber was not “adequate cause” for robber’s alleged sudden passion in
shooting customer). Stated another way, the provocation must not have been itself
provoked by the person seeking to avail himself of the sudden passion instruction to
the jury. Willis v. State, 936 S.W.2d 302, 308–09 (Tex. App.—Tyler 1996, pet.
ref’d). When an appellant creates the circumstances that inflame his or her passion,
a charge on sudden passion is not required. Id. at 309.
          On appeal, appellant characterizes Mitchell as the “first aggressor” because
Mitchell landed the first punch. Appellant denies that he engaged in any physically
aggressive behavior before the altercation between himself and Mitchell. While we
must focus on the evidence that supports appellant’s sudden passion request, we must
also view the evidence in context to avoid its mischaracterization. Despite
appellant’s depiction of the evidence, the record reveals that, although Mitchell
landed the first punch, it was appellant who initiated the confrontation by removing
his shirt, charging at Mitchell, and raising his fists. Appellant did these actions after
using provocative language, not only with Mitchell but also with Nwoko. Thus, the
record does not support appellant’s characterization of Mitchell as the “first
aggressor.” Rather, the record shows that appellant initiated the confrontation. 
          Moreover, the mere fact that appellant acted in response to being beaten by
Mitchell is not sufficient to warrant a charge on sudden passion. See Trevino, 100
S.W.3d at 241. “The murderous acts of one not of ordinary temper or whose response
to the alleged cause is not objectively common in the ordinary, reasonable person
does not support a [sudden passion] issue.” Willis, 936 S.W.2d at 308 (citing Lopez
v. State, 716 S.W.2d 127, 129 (Tex. App.—El Paso 1986, pet. ref’d) (interpreting
former voluntary manslaughter law, court held that shooting individual over breaking
of car window insufficient to raise issue of sudden passion). Stated differently, a
defendant is not entitled to a reduced sentence for murder when his emotional
responses are aberrational according to societal norms. See id. Appellant’s actions
of leaving a fight, retrieving a rifle, returning to the fight scene, and shooting a friend
repeatedly as he lies helplessly in the seat of a car do not constitute an objectively
common response in an ordinary reasonable person. See Smith v. State, 881 S.W.2d
727, 735 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (holding that victim’s
actions of cursing at defendant and pulling defendant’s hair are not conduct that
would ordinarily produce degree of anger, rage, resentment, or terror in person of
ordinary temper). Such conduct is not indicative of sudden passion; it is indicative
of deliberate revenge. 
          Because the evidence presented at trial did not raise the issue of sudden
passion, we hold that the trial court did not err by refusing to submit a mitigation
instruction at the punishment stage. 
 

Conclusion
          We affirm the judgment of the trial court.



 

                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).