Affirmed and Opinion filed May 16, 2002









Affirmed and Opinion filed May 16, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00478-CR

____________

 

DEMARCUS PEARSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 180th District Court

Harris County, Texas

Trial
Court Cause No. 842,197

 



 

O
P I N I O N

Appellant
Demarcus Pearson challenges his conviction for the murder of his
mother. Appellant contends the evidence is legally and factually insufficient
and the trial court erred in denying his request for a jury instruction on the
law of sudden passion.  We affirm.

I. 
Factual Background








Appellant=s mother, Vanessa Reedy, attended church with her friend,
Brenda Pruitt.  After the church services
ended around 9 p.m., the friends separated and went home.  Upon returning to her home, Pruitt received a
phone call from appellant, who indicated Reedy wanted to talk to Pruitt.  Reedy and Pruitt talked until appellant
received another telephone call from Nikia Bundage, Reedy=s daughter and appellant=s half-sister. 

Bundage testified that at the time of the
offense, appellant was living with Reedy. 
On the day Reedy was killed, Bundage received
a series of telephone calls from appellant, who was at their mother=s home.  The telephone calls, which began around 2:00
p.m., were initially lighthearted and conversational.  During the calls, appellant told Bundage that he planned to kill their mother.  Bundage believed
him to be joking.  During the third or
fourth telephone conversation, appellant asked Bundage
to help him kill their mother.  Again, Bundage did not take appellant seriously and Aplayed along@ with him.  Later that evening around 10:00 p.m.,
appellant called Bundage, said Alisten to this,@ and placed the telephone receiver
down.  Bundage
quickly told her roommate to pick up the telephone extension, at which point
they heard appellant yell, AMama@ and a few seconds later, a gunshot B the first of two.  Bundage and her
roommate both testified that before the first shot they heard Reedy pleading, APlease Marcus, forgive me. It will
never happen again.@[1] 
After the first shot, Bundage heard their
mother say, AI love you and Niki.@ 
After the second shot, appellant 
picked up the telephone receiver and told Bundage
that he was coming to her house.  Bundage immediately called 9-1-1 and the police.

While Bundage was on the phone with
the police, appellant arrived at her
house, walked around, and beat on the doors and windows.  Bundage refused to
let him enter.  When appellant heard police
cars approaching, he fled.  Houston
Police Officer D. Delossantos, who was responding to Bundage=s call, arrived at Bundage=s
residence just in time to see appellant running away from the house.  Officer Delossantos
pursued appellant on foot and eventually caught and arrested him








Meanwhile,
Houston Police Officers D.L. Shadden and E. Aguilera
arrived at Reedy=s home, and found her lifeless body on the bathroom floor in a
pool of blood.  Officer Aguilera stated
that Reedy=s brother, Dennis Walker, came out of the house holding a rifle
in his hand.  Walker told the police that
he had purchased the rifle for Reedy, and that he had found it in Reedy=s
room behind clothing in the closet. 

Dr.
Roger Milton, a Harris County medical examiner testified Reedy had sustained
two gunshot wounds, one bullet entering beneath the right eye, and the other
entering on the left side the head.  The
second bullet penetrated the brain stem, fracturing the base of the skull.  In Dr. Milton=s opinion, Reedy still would have been able to talk after the
first bullet, but the second one would have caused almost instant death.  

Appellant
testified and presented a completely different version of the events surrounding
his mother=s death.  Appellant
stated he was not living with his mother, but was at her home to meet with a
Navy recruiter.  He specifically denied
telling Bundage that he planned to kill his
mother.  Appellant also denied talking to
Bundage between their first conversation of the day
and their conversation immediately after the shooting.  Appellant claimed that when his mother
returned home from church, she started an argument with him.  Appellant testified that as the argument
escalated, he tried to leave, but saw his mother standing in the bathroom with
a gun in her hand.  Appellant testified
that his mother then removed the safety and pointed the gun at him.  Appellant claimed that when he tried to take
the gun from her, it discharged. 
According to appellant, he then called Bundage
and told her that he and their mother had been arguing, a gun had accidently discharged, and their mother was dead.  Appellant also contends that Bundage told him to come over to her house to discuss what
should be done.  Appellant claimed that
he did not know how his mother suffered the second gunshot wound, and that
after the first shot, he dropped the gun to the ground.

Appellant
was indicted with the felony offense of murder.  See Tex.
Pen. Code Ann. ' 19.02(b) (Vernon 1994). 
He pled not guilty.  A jury found
appellant guilty as charged and assessed punishment at twenty years=
confinement. 








II.  Factual
And Legal Sufficiency of The Evidence

In
first and second points of error, appellant contends the evidence is both
legally and factually insufficient to prove he committed the offense of
murder.  More specifically, he complains
the evidence is insufficient to show that he intended to inflict serious bodily
injury or death upon the complainant, an element of the offense of murder.  See Tex.
Pen. Code Ann. ' 19.02 (Vernon 1994)

In
evaluating a legal sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as
a court, believe the State=s evidence or believe that the defense=s
evidence outweighs the State=s evidence.  Wicker v.
State, 667 S.W.2d 137, 143 (Tex. Crim. App.
1984).  The verdict may not be overturned
unless it is irrational or unsupported by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991). 
The jury, as the trier of fact, Ais
the sole judge of the credibility of witnesses and of the strength of the
evidence.@  Fuentes v. State,
991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or disbelieve
any portion of the witnesses= testimony.  Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986).  When faced with conflicting
evidence, we presume the trier of fact resolved
conflicts in favor of the prevailing party. 
Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993).  Therefore, if any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt, we must affirm.  McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997).








In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence without the prism of Ain
the light most favorable to the prosecution@ and set aside the verdict only if it is Aso
contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust.@  Johnson v. State, 23 S.W.3d 1, 6B7
(Tex. Crim. App. 2000) (citing Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996)).  This concept embraces both Aformulations
utilized in civil jurisprudence, i.e., that evidence can be factually
insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust
or (2) the adverse finding is against the great weight and preponderance of the
available evidence.@  Id. at 11.  Under this second formulation, the court
essentially compares the evidence which tends to prove the existence of a fact
with the evidence that tends to disprove that fact.  Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  In
conducting the factual sufficiency review, we must employ appropriate deference
so that we do not substitute our judgment for that of the fact finder.  Id. at 648.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the weight and credibility given to
any witness=s testimony.  Cain v.
State, 958 S.W.2d 404 (Tex. Crim. App. 1997).

A
person commits the offense of murder if he: (1) intentionally[2]
or knowingly [3]
causes the death of an individual or (2) intends to cause serious bodily injury
and commits an act clearly dangerous to human life that causes the death of an
individual.  Tex. Pen.Code Ann. ''
19.02(b)(1) and (2) (Vernon 1994).  The
question of intent to kill is a question of fact for the jury.  Hemphill v. State, 505 S.W.2d 560, 562
(Tex. Crim. App. 1974).  The jury may Ainfer intent and/or knowledge from an accused=s
acts, words, and conduct as well as from any facts in evidence which, to the
jurors=
minds, prove the existence of an intent to kill.@  Patrick v. State,
906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  The jury may also infer intent to kill from
the extent of a victim=s injuries.  Id. at
487.  Moreover, it is not necessary that
every fact point directly and independently to appellant=s
guilt; it is enough if the conclusion is warranted by the combined and
cumulative force of all the incriminating circumstances.  Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 
1993).








Appellant
argues that the evidence is insufficient to prove that he intended to cause
serious bodily injury or death to his mother because (1) he testified his
mother=s
rifle first discharged while they were in a struggle and (2) his failure to
remember the rifle firing a second shot is evidence of a lack of intent to
either shoot his mother or cause her death. 
Appellant=s argument lacks merit. 

When
viewed in the light most favorable to the prosecution, the evidence clearly
shows that appellant, using a deadly weapon, intended to cause serious bodily
injury or death to Reedy.  See Godsey v. State, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (holding that when a deadly weapon is used
in a deadly manner, the inference is almost conclusive of the intent to kill);
Flanagan v. State, 675 S.W.2d 734, 744 (Tex. Crim.
App. 1984) (holding that the intent to kill may be inferred from the use of a
deadly weapon); see also Stallings v. State, 476 S.W.2d, 679, 681
(Tex. Crim. App. 1972) (holding that a shotgun is a
deadly weapon per se).  On the day
of the incident, appellant placed a series of telephone calls to his
half-sister, telling her several times that he intended to kill their
mother.  Appellant made a final call to
his half-sister immediately before the shooting, stating, AI
am going to do it@ and Alisten to this@ as he put the telephone receiver down so that she could hear
what was about to happen.  During this
telephone call, appellant=s half-sister and her roommate heard appellant call to Reedy,
listened as Reedy pled for her life, and then heard two distinct gunshots.  After the second gunshot, appellant picked up
the receiver and told his half-sister that he was on his way to her house.  He arrived shortly thereafter but fled as
soon as the police arrived.  The medical
examiner=s
testimony conclusively established that Reedy sustained two gunshots, the
second one killing her almost instantly. 
The evidence showed that neither of the gunshots were from close range,
which directly contradicts appellant=s story that the gun discharged while he was struggling with
his mother.  Furthermore, appellant=s
lack of memory regarding the second shot does not negate his intent to cause
serious bodily injury or death to the complainant.

There
is ample evidence in the record for a rational jury to have found beyond a
reasonable doubt that appellant intentionally and knowingly caused his mother=s
death or intended to cause serious bodily injury and committed an act
dangerous to human life which caused her death. 
See Tex. Pen. Code Ann.
'
19.02(b) (Vernon 1994).  Accordingly, we
conclude the evidence is legally sufficient to support appellant=s
conviction for murder.








Turning
now to appellant=s challenge to the factual sufficiency of the evidence, we note
that the jury, as factfinder, could believe the State=s
evidence and disbelieve appellant=s statements.  See
Scott v. State, 934 S.W.2d 396, 399 (Tex. App.CDallas
1996, no pet.). Apparently, the jury did not believe appellant=s
version of events.  Given the strength of
the evidence in the record, we defer more readily to the jury=s
verdict in conducting our factual sufficiency review.  See Johnson, 23 S.W.3d at 8 (holding
that the degree of deference a reviewing court provides must be proportionate
with the facts it can accurately glean from the trial record).  We conclude the jury=s
findings were not so contrary to the overwhelming weight of the evidence as to
be clearly wrong or manifestly unjust, and thus we find the evidence is
factually sufficient to support appellant=s conviction.

Having
found the evidence legally and factually sufficient to support appellant=s
murder conviction, we overrule appellant=s first and second points of error.

III.  Sudden
Passion Instruction








In
his third point of error, appellant contends the trial court erred at the
punishment stage of trial in denying his request for a jury instruction on the
lesser range of punishment applicable if the murder had been committed in an
act of sudden passion.  See Tex. Pen. Code Ann. '
19.02(d) (Vernon 1994).  Specifically,
appellant argues his trial testimony relating to the fight with Reedy included
facts sufficient to warrant submission of a Asudden passion@ issue.  A defendant who
raises the issue of Asudden passion@ is entitled to a jury instruction that, if the defendant
proves by a preponderance of the evidence he acted under the immediate
influence of sudden passion arising from an adequate cause, the offense is a
second degree felony.  See id. ' 19.02(d).  ASudden
passion@
is defined as passion directly caused by and arising out of provocation, by the
individual killed or another acting with the person killed, which passion
arises at the time of the offense and is not solely the result of former
provocation.  Id. '
19.02(a)(2).  AAdequate
cause@
is defined as a cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the
mind incapable of cool reflection.  Id.
 '
19.02(a)(1).  

ASudden passion@ is no longer a guilt-innocence issue, but is a mitigating
circumstance considered at the punishment phase of a murder trial.  Benavides v. State, 992 S.W.2d 511, 523
(Tex. App.CHouston [1st Dist.] 1999, pet. ref=d).  To demonstrate Asudden passion,@ appellant must produce: (1) objective evidence that the victim
or someone acting with the victim directly provoked the defendant at the time
of the killing; and (2) subjective evidence demonstrating that the defendant
killed the victim while in an excited and agitated state of mind arising out of
the direct provocation.  Lopez v.
State, 716 S.W.2d 127, 129 (Tex. App.CEl Paso 1986, no pet). 
The defendant must produce evidence that he acted in the Athroes
of actual, subjective passion.@  Id. at 129.  A bare claim of fear does not show adequate
cause.  Daniels v. State, 645
S.W.2d 459, 460 (Tex. Crim. App. 1983).  The question is whether there was any
evidence from which a rational jury could infer such passion.  Moore v. State, 969 S.W.2d 4, 11 (Tex. Crim. App. 1998).

Appellant
points to the following examples of testimony that purportedly raised the issue
of sudden passion arising from an adequate cause: 

(1)
his testimony at the guilt/innocence phase that Reedy was shot only after she
picked up the rifle, released the safety and provoked him.  [This testimony was not introduced at the
punishment phase]; and 

(2)
Reedy=s spouse=s
testimony at the punishment phase that appellant had been subjected to a Abad
family environment@ all of his
life, and that Reedy was capable of provoking anger from appellant.

 








Appellant
did not testify at punishment about his emotional state at the time of the
shooting.  The record contains no
evidence that would suggest appellant was emotionally charged or afraid for his
life at the time of the shooting. 
Although there was a great deal of testimony about appellant=s
anger or potential for anger, there was no testimony that appellant was in fear
or was angry to the degree that he was incapable of cool reflection at the time
he fired the rifle.  Moreover, the
circumstances surrounding the shooting do not raise an inference that appellant
was incapable of cool reflection.  There
is no evidence that Reedy screamed, yelled, or provoked appellant at the time
of the incident.  In fact, the evidence
shows that she made a plea for her life before the first shot was fired.  After the first shot, the only statement
Reedy made was an expression of love for her children.  Appellant=s actions after the shooting do not suggest he was acting out
of sudden passion either.  According to
the two witnesses who heard the shooting over the telephone, after the
gunshots, appellant picked up the telephone and continued his conversation,
telling his half-sister that he was on his way to her home. 

We
find no evidence raising an issue that appellant shot Reedy under the immediate
influence of a sudden passion arising from an adequate cause.  Viewed favorably to appellant, the evidence
does not show that he acted under the requisite immediate influence of sudden
passion.  Because the issue
was not raised by the evidence, the trial court did not err in denying an
instruction on the law of sudden passion in the court=s charge to
the jury at punishment.  Accordingly, we
overrule appellant=s
third point of error. 

We affirm the trial
court=s
judgment.

 

 

/s/        Kem Thompson
Frost

Justice

 

Judgment
rendered and Opinion filed May 16, 2002.

Panel
consists of Chief Justice Brister and Justices Anderson and Frost.

Do
Not Publish C Tex.
R. App. P. 47.3(b).

 











[1]  Houston
Police Officer C. Abbondanolo testified on rebuttal
that during his interview, appellant told the officer that after the first
shot, his mother said, ADe=Marcus,
please help, I love you.@ 





[2]  A
person acts intentionally with respect to the result of his conduct when it is
his conscious objective or desire to cause the result.  Tex.
Pen. Code Ann. ' 6.03(a)
(Vernon 1994).





[3]  A
person acts knowingly with respect to the result of his conduct when he is
aware his conduct is reasonably certain to cause the result.  Tex.
Pen. Code Ann. ' 6.03(b)
(Vernon 1994)